In re Gordon J. DAGHIR, President Judge of the Court of Common Pleas, Fifty–Ninth Judicial District, Elk and Cameron Counties.

**No. 1 JD 95.**

Court of Judicial Discipline of Pennsylvania.

April 19, 1995.

---

Before McCLOSKEY, President Judge, and BURNS, DePAUL, CASSEBAUM, JOHNSON and MAGARO, JJ.

PER CURIAM.

In accordance with C.J.D.R.P. No. 504(B), the Court hereby issues the following decision.

### FINDINGS OF FACT

The Court adopts the following stipulations of fact submitted by the parties:

1. Judge Gordon J. Daghir (hereinafter referred to as "Respondent") is the duly elected president judge serving the Fifty–Ninth Judicial District which encompasses Elk and Cameron Counties, Pennsylvania. (Stip.Fact No. 2.)

2. Respondent has continuously served as president judge in the Fifty–Ninth Judicial District since January of 1986. Respondent is the only commissioned judge presently serving the Fifty–Ninth Judicial District. (Stip.Fact No. 3.)

3. On June 15, 1994, Respondent filed a Self Report with the [Judicial Conduct] Board (Board) advising it of the facts hereinafter included in Findings of Fact [4 through 21]. (Stip.Fact No. 4.)

4. On or about September 25, 1987, Margaret Howard filed a complaint for divorce in the Elk County Branch of the Fifty–Ninth Judicial District. This action was docketed to 87–587. The named defendant in this action was Robert V. Howard. (Stip.Fact No. 5.)

5. The above complaint in divorce raised issues of divorce, equitable distribution, custody, support, alimony pendente lite, and alimony. (Stip.Fact No. 6.)

6. During the course of the *Howard v. Howard* litigation, numerous Motions and Petitions were filed by the parties and ruled upon by the Respondent. (Stip.Fact No. 7.)

7. From the filing of the complaint on September 25, 1987, until on or about June 7, 1994, Respondent presided over the *Howard v. Howard* divorce litigation. (Stip.Fact No. 8.)

8. On January 28, 1991, an Order was entered by the Respondent bifurcating proceedings in this matter and a Final Decree in Divorce was entered by the Respondent on or about January 31, 1991. (Stip.Fact No. 9.)

9. Following the entry of the Divorce Decree, there was still pending before the Respondent the equitable distribution of the parties' property. (Stip.Fact No. 10.)

10. On December 23, 1991, Respondent referred the case to Attorney Sharon L. Gregory as Master on the issue of the equitable distribution of marital property. Sharon L. Gregory was the permanent Master appointed by the Court on December 20, 1986, to hear all Elk County divorce proceedings commencing January 1, 1987. (Stip.Fact No. 11.)

11. Master's Hearings were held before Attorney Gregory on December 3, 1992; December 4, 1992; December 21, 1992; December 22, 1992; January 7, 1993 and April 21, 1993. (Stip.Fact No. 12.)

12. In the fall of 1992, the said Robert V. Howard was the owner of at least four (4) 50 yard line season tickets to Penn State University football games and a preferred parking pass ("the tickets and parking pass"). (Stip.Fact No. 13.)

13. In early October of 1992, approximately a few days prior to the 1992 Miami v. Penn State University Football game, Robert V. Howard called the Respondent concerning matters unrelated to the *Howard v. Howard* litigation. (Stip.Fact No. 14.)

14. During this conversation, Respondent accepted a gift from Robert V. Howard of four (4) tickets to the 1992 Miami v. Penn State University football game. (Stip.Fact No. 15.)

15. Robert V. Howard's intention in making the gift of the said tickets was to seek favorable treatment in the various rulings that would be made by the Respondent in that litigation. The Board cannot prove that Robert V. Howard received any such favorable treatment from the Respondent. (Stip.Fact No. 16.)

16. Respondent already had four tickets and [a] parking pass for the Miami game for his use before Robert V. Howard made the offer of his football tickets and parking pass. (Stip.Fact No. 17.)

17. Respondent took possession of and used Robert V. Howard's tickets and attended the Miami v. Penn State University football game held on October 10, 1992, in Beaver Stadium, State College, Centre County, Pennsylvania. Respondent gave the parking pass to the daughter of a friend for her use. (Stip.Fact No. 18.)

18. In early 1994, Attorney Gregory filed the Master's Report which addressed the questions of equitable distribution in the Howard divorce. (Stip.Fact No. 19.)

19. Exceptions were filed by both parties. (Stip.Fact No. 20.)

20. Argument was held on these exceptions before Respondent on or about March 21, 1994. (Stip.Fact No. 21.)

21. On June 7, 1994, the Respondent entered an order recusing himself from this matter. On June 15, 1994, the Respondent filed the Self-Report referred to in Finding of Fact [3]. (Stip.Fact No. 22.)

22. Before the exceptions were ruled upon by the judge appointed following the Respondent's recusal, Robert V. Howard and Margaret A. Howard amicably resolved the equitable distribution matter, entered a stipulation for distribution, and withdrew their exceptions thereby terminating the case. (Stip.Fact No. 23.)

23. Respondent engaged in a pattern of unreasonable and unjustifiable delay in the disposition and decision of six cases pending before him in his capacity as the presiding judge in the Fifty–Ninth District and as a visiting judge. (Stip.Fact No. 25.)

24. Decisions in all of the six cases were made and entered on the record before the Respondent received notice on October 27, 1994, that the Board was conducting an investigation into unreasonable delay or the disposition of cases by the Respondent within the 59th Judicial District and a neighboring county. (Stip.Fact No. 27.)

The Court hereby further adopts Stipulated Findings of Fact Nos. 28 through 60, which are summarized below:

25. In the case of *Paul Quattrone v. Erie Insurance Exchange,* an action filed under the Pennsylvania No–Fault Motor Vehicle Act, the Respondent conducted a non-jury trial on December 17, 1987. (Stip.Fact No. 28.)

26. The Respondent did not enter a verdict in this matter until on or about September 19, 1994. (Stip.Fact No. 30.)

27. In the case of *Bish v. Semiconductor Specialties Corporation,* following a jury verdict in favor of the plaintiff, the defendant filed post-trial motions, argument on which was conducted on July 15, 1987. (Stip.Fact Nos. 34 and 35.)

28. In March and July of 1991, the parties respectively filed Supplemental Memoranda regarding the Post–Trial Motions, and the defendant filed for protection under Chapter 11 of the Bankruptcy Code. (Stip.Fact Nos. 36 and 37.)

29. The Respondent did not enter a decision on the Post–Trial Motions until March 16, 1992. (Stip.Fact No. 39.)

30. In the case of *Fritz v. Benzinger Township,* the Respondent conducted a zoning hearing involving a request for a variance on March 7, 1989. (Stip.Fact No. 42.)

31. The Respondent did not enter a decision in this matter until approximately fifty-three months later, on October 12, 1993. (Stip.Fact No. 43.)

32. In the case of *Phillips v. Intech Metals, Inc., et al.*, the Respondent conducted a non-jury trial during October, 1989, and the parties submitted proposed findings of fact and conclusions of law in April, 1990. (Stip.Fact Nos. 45 and 46.)

33. The Respondent rendered an opinion and decree nisi in the matter on January 31, 1994, approximately forty-four months after the parties submitted proposed factual findings and conclusions of law. (Stip.Fact Nos. 47 and 48.)

34. In the case of *Borough of St. Mary's v. Burek, Shippling, and Palumbo*, a case involving municipal liens against individual property owners, the Respondent conducted a non-jury trial on August 19, 1991. (Stip.Fact Nos. 50 and 51.)

35. The transcript of the proceedings was filed with the Prothonotary's Office in October, 1991. (Stip.Fact No. 52.)

36. The Respondent did not enter a decision in this case until October 18, 1993, approximately twenty-three months after trial. (Stip.Fact Nos. 53 and 54.)

37. In the case of *Rockwood Holding Co., et al. v. Clark, Ingram*, an equity action, which had been remanded to the Common Pleas Court by the Superior Court on September 18, 1986, the Respondent, after additional discovery had been concluded, conducted a hearing in this matter on September 13, 1988. (Stip.Fact No. 55.)

38. The parties submitted proposed findings of fact and conclusions of law in May, 1989, and the Respondent heard argument on the matter on July 20, 1989. (Stip.Fact No. 56.)

39. The Respondent did not enter a decision in the matter until October 29, 1992, approximately thirty-eight months after the parties filed proposed factual findings and conclusions of law. (Stip.Fact Nos. 56 and 57.)

40. Post–Trial Motions were filed and briefs were submitted in support of the Motions on January 19, 1993; however, the Respondent did not issue a decision on the Motions until September 28, 1994. (Stip.Fact Nos. 58 and 59.)

The Court hereby finds the following additional fact:

41. At the hearing conducted by the Court in this matter on March 28, 1995, the Board withdrew Counts 1, 3–5, 7–9, and 11–18.

## CONCLUSIONS OF LAW

### *Discussion*

The Respondent has admitted to the violations in Counts 2, 6 and 10 of the Board's Complaint, which respectively involve charges that the Respondent:

(a) violated Canon 2 of the Judicial Code of Conduct, which directs judges to "avoid impropriety and the appearance of impropriety in all [their] activities" and to "respect and comply with the law ... and ... conduct [themselves] at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

(b) engaged in conduct prohibited under § 17(c) of the Pennsylvania Constitution, specifically, conduct for which he was paid or accepted for performance of any judicial duty or for any service connected with his office, any fee, emolument or perquisite other than the salary and expenses provided by law.

(c) violated Canon 3(A)(5) of the Code of Judicial Conduct, which provides that judges "should dispose promptly of the business of the court."

Under Article V, § 18(d)(1), judges are subject to disciplinary sanctions by this Court when the Board establishes by clear and convincing evidence that a judicial officer violated a rule or canon prescribed by the Supreme Court. The Canons contained in the Code of Judicial Conduct constitute such rules or canons. Accordingly, violations of those canons subject a judicial officer to sanctions. Additionally, § 18 also subjects judicial officers to disciplinary sanctions if the Board establishes that a judge violated a

provision of § 17 of Article V of the Constitution.

This Court hereby concludes:

1. The decisional delay in each of the cases described in Findings of Facts 25–40 was not justified by either the factual or legal complexity of the issues which were required to be resolved prior to rendering a decision.

2. The Respondent failed to dispose of the business of the court promptly.

3. Judge Daghir violated Canon 3(A)(5) of the Code of Judicial Conduct.

4. The Respondent failed to avoid the appearance of impropriety in his activities, and failed to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

5. Judge Daghir violated Canon 2 of the Code of Judicial Conduct.

6. Judge Daghir's acceptance of the football tickets constitutes payment in the form of an emolument or perquisite, other than his salary, for the performance of his judicial duties.

7. The Respondent committed a violation of Article V, § 17(c) of the Pennsylvania Constitution.

8. The violations which Judge Daghir committed under the Canons of the Code of Judicial Conduct and under § 17(c) of Article V, subject him to the disciplinary sanctions imposed below by order of this Court, under Article V, § 18(d)(1) of the Pennsylvania Constitution.

9. Article V, § 18(d)(1) vests this Court with broad discretionary power to determine the sanctions to be imposed upon a judicial officer after the Court has determined that the judge has engaged in conduct that violates Article V, § 17 of the Constitution or Canons of the Code of Judicial Conduct, and provides the Court with the authority to suspend, remove or otherwise discipline a judicial officer.

## ORDER

AND NOW, this 19th day of April, 1995, based upon the findings of fact and conclu-sions of law, this Court enters the following ORDER:

1. Judge Daghir is hereby REPRIMANDED for the conduct to which he has admitted.

2. Judge Daghir is hereby SUSPENDED for a term of seven calendar days without pay. Said suspension shall begin on Sunday, May 21, 1995 and shall conclude at the end of the day, Saturday, May 27, 1995.

3. Judge Daghir is directed to APPEAR BEFORE THIS COURT on Tuesday, May 23, 1995 at 9:45 a.m. in Commonwealth Court Courtroom No. 1, 5th Floor, South Office Building, Harrisburg, Pennsylvania, at which time this Court shall impose an ORAL REPRIMAND.

4. The Court has based its decision to impose the above sanctions upon the following determinations:

(a) Judge Daghir demonstrated a serious lack of judgment in accepting Penn State football tickets from a person who had a matter of significant financial interest pending before him.

(b) Judges are rightly expected to conduct their professional and personal lives in an exemplary manner. The public has a right to a judicial system in which they can have complete confidence.

(c) A judge must always be alert to situations which give rise to inherent impropriety. The mere giving of a gift from a lawyer to a judge, even when the lawyer does not have a case pending before the judge, implies that there is some string or thread attached to the gift, unless, of course, the gift arises out of a long-standing personal friendship between the lawyer and judge.

(d) Accepting gifts from litigants is one of the clearest examples of a situation that a judge must avoid, even if the judicial officer perceives the gift as one that does not have much value, and even if the judge has no intention of bestowing favorable treatment upon the donor in exchange for the gift.

(e) Judge Daghir's acceptance of the tickets demonstrated a fundamental lack of understanding of his position as a jurist

and his responsibilities to the public. Judges must always be concerned with not only the presence of actual bias, but the appearance of bias and partiality as well. Judge Daghir failed to recognize that his acceptance of the gift from a litigant created, at a minimum, the appearance of partiality and impropriety. Such conduct results in the erosion of public confidence and increases the skepticism and cynicism with which the public often views the administration of justice. Judge Daghir's improper conduct has caused the image of all the members of the Commonwealth's judicial system to be tarnished, and has undermined the public's view of the administration of justice throughout the state.

(f) The Respondent's laudable act of reporting his improper acceptance of the tickets to the Judicial Conduct Board does not excuse his conduct in this matter. The Court encourages judicial officers to report such misconduct; self-reporting is indeed one means by which a judge may show that he or she is remorseful and cooperative. However, in the case of the Respondent, this Court notes with disapproval the fact that Judge Daghir delayed reporting his receipt of the tickets and did not recuse himself from the case until after the donor-litigant had contacted him and until after the Special Master the Respondent appointed to decide the equitable distribution aspect of the donor-litigant's divorce action had issued a proposed report on the distribution of property.

(g) Respondent testified that, after this matter became public, he took a leave of absence from his position as a member of the Pennsylvania Board of Law Examiners. That Board has included among its powers the responsibility of recommending the admission of persons to the Pennsylvania bar and the practice of law. Pa.B.A.R. 104(c)(3). In discharging that obligation, the Board is required to evaluate the qualifications of candidates, and must find an absence of prior conduct by the applicant which in the opinion of the Board indicates character and general qualifications incompatible with the standards expected to be observed by the members of the bar of this Commonwealth. Pa.B.A.R. 203(a)(3).

(h) We recognize that a position on the Board of Law Examiners is at the pleasure of the Pennsylvania Supreme Court. However, we cannot but express our concern that Judge Daghir's decision, to merely take a leave of absence, rather than resign from the Board, while stipulating to the facts presented to this Court, appears to reflect a lack of appreciation by him for the adverse impact his continued connection must have upon the work, and the image, of that Board.

(i) The supplemental stipulations of fact make clear the fact that the Respondent did indeed have a demanding case load. Those stipulations indicate that in the years 1987 through 1993, Judge Daghir disposed of cases in criminal, civil, family and orphans' court matters totaling between approximately 2,500 and 4,500 per year. Nevertheless, Judge Daghir failed in his responsibility to render a prompt decision to litigants in six cases. Delay in the administration of justice causes the image of the judiciary in general to be tarnished. And, where the delay is unjustified, as in these six cases, the task of burnishing the tainted image of the judiciary becomes more difficult.

5. The Clerk shall forward copies of this ORDER to the Chief Justice of Pennsylvania, the Court Administrator of Pennsylvania and the Treasurer of Pennsylvania.

McGINLEY and DONOHUE, JJ., did not participate in the consideration or disposition of this Decision.