# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **1st day of May, 2026** are as follows:

**BY Griffin, J.:**

**2025-O-01587**  **IN RE: JUDGE JOHN C. REEVES SEVENTH JUDICIAL DISTRICT COURT PARISHES OF CONCORDIA AND CATAHOULA STATE OF LOUISIANA**

SUSPENSION IMPOSED. SEE OPINION.

Weimer, C.J., concurs in part and dissents in part and assigns reasons.

**SUPREME COURT OF LOUISIANA**

**No. 2025-O-01587**

**IN RE: JUDGE JOHN C. REEVES**
**SEVENTH JUDICIAL DISTRICT COURT**
**PARISHES OF CONCORDIA AND CATAHOULA**
**STATE OF LOUISIANA**

*Judiciary Commission of Louisiana*

**GRIFFIN, J.**[*]

This matter arises from the recommendation of the Judiciary Commission of Louisiana ("the Commission") that Judge John C. Reeves be suspended without pay for thirty days for accepting a $100 bill from a litigant for whom Judge Reeves signed a judgment of possession in a succession case. After considering the facts, circumstances, and applicable law, we reject the recommendation of the Commission and impose a suspension for twenty days without pay.

## FACTS AND PROCEDURAL HISTORY

Judge Reeves became a judge of the Seventh Judicial District Court, parishes of Concordia and Catahoula, in January of 2015 and has served continuously since that time. An investigation arose after an anonymous complaint was filed. The Commission's Notice of Hearing alleges that Judge Reeves violated Canons 1, 2, 2(A), 2(B), 6(B)(1) of the code of Judicial Conduct, as well as Article V § 25 (C) of the Louisiana Constitution based on the following count: Judge Reeves accepted a $100 dollar bill from a litigant in a succession matter after signing a judgment of possession in that same succession proceeding, which awarded that litigant the majority of the estate at issue.

---

[*] Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

Judge Reeves and the Office of Special Counsel ("OSC") subsequently entered stipulations of facts and conclusion of law, in which the parties agreed as to all material facts and that Judge Reeves violated the Canons and La. Const. art. V, § 25 (C) as charged. The Commission accepted the stipulations and dispensed with the services of a hearing officer. The Commission recommended that Judge Reeves be suspended for thirty days without pay and that he be ordered to reimburse the Commission $3,121.53 in hard costs.[1] The matter was set on this Court's docket for oral argument under LASC Rule XXIII, § 14. The Court subsequently granted a joint motion by the parties waiving briefing and oral argument.

The following facts were presented to the Commission:

Judge Reeves served on the Seventh Judicial District Court, which is comprised of two parishes, Concordia and Catahoula, with courthouses located in both parishes. It contains two divisions – A and B. Judge Reeves served Division B. Judge Kathy Johnson served Division A. The two judges would alternate between the two courthouses.

On Friday June 2, 2023, Judge Reeves received a cell phone call from Tim Tomlinson, an individual he knew from the community. Mr. Tomlinson asked if Judge Reeves would sign some documents for him. After speaking with Mr. Tomlinson, Judge Reeves called Julie Lipsey, then the judicial assistant for Judge Johnson. Judges Reeves asked Ms. Lipsey to stay at the courthouse during her lunch break as someone would be bringing papers for him to sign.

Mr. Tomlinson met Judge Reeves in chambers where he presented the Judge with a "Petition for Probate of a Notarial or Statutory Will and for Possession" in his mother's name and asked Judge Reeves to sign a judgment of possession. The petition had been prepared by an attorney and signed and approved by all heirs. The

---

[1] The commission's recommendation was unanimous, with one member, retired Justice Chet D. Traylor, recused.

2

petition had not yet been filed with the Clerk of Court and had not been allotted to Judge Reeves. The testimony of Mr. Tomlinson and Ms. Lipsey establishes that Judge Reeves did not carefully and thoroughly review the pleadings before he signed the judgment of possession. Judge Reeves testified that he did read the pleadings before signing them. Nevertheless, the judgment of possession was in accordance with the decedent's will, and the parties have stipulated that there was no apparent reason the judgment should not have been signed. The matter was then filed in the clerk's office in Catahoula Parish and subsequently allotted to Judge Reeves.

After Judge Reeves signed the judgment of possession, Mr. Tomlinson handed him a folded $100 bill and told him to use it to take his family out to lunch. Judge Reeves accepted the money from Mr. Tomlinson in the visible presence of Ms. Lipsey. Mr. Tomlinson testified that he always carries cash on him, and that he wanted to show his appreciation to Judge Reeves for waiting for him at the courthouse to sign the document. Mr. Tomlinson did not believe Judge Reeves had accepted money from litigants before. Ms. Lipsey did not think the $100 bill was a *quid pro quo* for Judge Reeves' signing the judgment of possession, nor did she believe the judge was that kind of person. Ms. Lipsey testified that she reported the incident to others at the court, including Judge Johnson, and that the situation factored into her decision to end her employment with the court. Judge Reeves asserted that he refused the money multiple times but then accepted it after telling Mr. Tomlinson he would donate it to church. This testimony was inconsistent with that of Ms. Lipsey. Mr. Tomlinson did not testify about whether Judge Reeves said he would give the money to church. The parties stipulated that if called, Ms. Lipsey would have testified that Judge Reeves did not state he was going to give the money to church. According to Ms. Lipsey, Judge Reeves first said "no" when offered the money, then Mr. Tomlinson said, "lunch is on me," and Judge Reeves took the money. Judge Reeves elaborated that he took the $100 bill so that he could be "done

3

with it" and "get on about [his] business." Judge Reeves asserted that he donated the money to church when he attended services the following Sunday. However, Judge Reeves acknowledged that he typically gives $100 at church each week and did not give $200 that week.

## DISCUSSION

The issue before this Court is whether we should accept the recommendation of the Commission and suspend Judge Reeves for thirty days without pay. The parties agree as to all relevant facts and that Judges Reeves' conduct violated Canons 1, 2, 2(A), 2(B), and 6(B)(1) of the Code of Judicial Conduct, as well as La. Const. art. V, § 25 (C). The only dispute is the discipline to be imposed.

In imposing discipline, we are guided by the factors set forth in *In re: Chaisson*, 549 So.2d 259, 266 (La. 1989): (a) whether the misconduct is an isolated instance or evidences a pattern of misconduct; (b) the nature, extent, and frequency of occurrence of the acts of the misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and, (j) the extent to which the judge exploited his position to satisfy his personal desires.

*(a) whether the misconduct is an isolated instance or evidences a pattern of misconduct and (b) the nature, extent, and frequency of occurrence of the acts of the misconduct*

The misconduct in this matter was isolated. However, it severely tainted the integrity of the judiciary.

*(c) whether the misconduct occurred in or out of the courtroom and (d) whether the misconduct occurred in the judge's official capacity or in his private life*

The misconduct in this matter occurred out of the courtroom but at the courthouse, when Judge Reeves was acting in his official capacity.

*(e) whether the judge has acknowledged or recognized that the acts occurred and (f) whether the judge has evidenced an effort to change or modify his conduct*

Judge Reeves stipulated to all of the facts and the ethical violations in the Notice of Hearing. He asserted multiple times that he took full responsibility for his actions, expressed regret and remorse, and assured the Commission that he has never done anything similar in the past, but he did not satisfactorily explain why he did not immediately try to return the money to Mr. Tomlinson or self-report his ethical violation. He also cited purported mitigating facts that were not ultimately corroborated, such as that he thoroughly read the documents before signing, called Mr. Tomlinson's lawyer before signing to verify the documents and their allotment, and told Mr. Tomlinson that he would give the money to church. However, we agree with the Commission that Judge Reeves' remorse is sincere and that his testimony did not negate his agreement to the stipulated facts. *See In re: Cresap*, 06-1242, pp. 21-22 (La. 10/17/06), 940 So. 2d 624, 637.

*(g) the length of service on the bench*

Judge Reeves assumed judicial office in January of 2015 and has served continuously since. As an experienced judge, he should have known better than to accept what amounted to a gratuity from a litigant for performing his judicial duties.

*(h) whether there have been prior complaints about this judge*

Judge Reeves has no prior reportable history of judicial misconduct.

*(i) the effect the misconduct has upon the integrity of and respect for the judiciary*

Judge Reeves' acceptance of money from a litigant greatly harmed the integrity of and respect for the judiciary. Rather than steadfastly refuse the money and use the opportunity to demonstrate integrity on behalf of the entire judiciary, Judge Reeves' corrosive act of accepting a 'hundred-dollar handshake' from a litigant after agreeing to meet him at the courthouse to sign a judgment perpetuated the pervasive negative stereotype of a corrupt judiciary. As an elected official and public servant, a judge should not accept a monetary gratuity for performing those duties with which he has been entrusted.

Even though there was no *quid pro quo*, Judge Reeves allowed himself to be seen as a judge who offers special treatment to those willing and able to pay for it. This is especially true considering that the judgment granted Mr. Tomlinson the bulk of the estate, Judge Reeves ensured that the succession would be allotted to him by signing the judgment before any documents had been filed with the clerk's office, and the other two people present testified that Judge Reeves flipped through the documents to the signature page and did not carefully review them. Moreover, the impact on the integrity of the judiciary is apparent by the actions of the sole witness to the exchange of money, who was so appalled by the act that she reported it to others, which eventually resulted in an anonymous complaint to the Commission, and ultimately led her to leave her position with the court.

*(j) the extent to which the judge exploited his position to satisfy his personal desires*

While the parties agreed that he donated the $100 bill to his church, Judge Reeves testified that he regularly does so and at no time did he donate two hundred dollars to his church. Therefore, Judge Reeves took advantage of his position when he improperly accepted a monetary benefit for performing his judicial duties.

The discipline to be imposed depends on the circumstance of each case and the gravity of the offenses involved, with consideration given to any aggravating and

mitigating circumstances. *In re: Ellender*, 04-2123, p. 13 (La. 12/13/04), 889 So.2d 225, 233. The Commission found that Judge Reeves did not act in bad faith. However, judges "may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute." *In re: Hunter,* 02-1975 p.16 (La. 8/19/02), 823 So.2d 325, 336. Judge Reeves' misconduct was a single isolated incident that nevertheless seriously tainted the integrity and reputation of the judiciary. The evidence shows that Judge Reeves is remorseful and has accepted full responsibility for his actions. Further, while we agree with the Commission that suspension is appropriate, Judge Reeves waived any defensive briefing or argument at this Court, which evidences further acceptance and remorse. As such, a less severe suspension is appropriate in this matter. *Compare In re: Free*, 14-1828 (La. 12/9/14), 158 So. 3d 771 (judge suspended without pay for thirty days for, among other misconduct, accepting an invitation to an all-expenses-paid trip on a private jet to a hunting ranch from attorneys in a case before him; there was no evidence or allegation that Judge Free's acceptance of the invitation influenced any of his decision-making in the case) with *In re: Daghir*, 657 A.2d 1032, 1033 (Pa. Ct. Jud. Disc. 1995) (judge suspended for seven days for accepting football tickets from the defendant in a divorce proceeding before him). Considering the *Chaisson* factors and aforementioned jurisprudence, this Court imposes a suspension of twenty days without pay and reimbursements of hard costs to the Commission in the amount of $3,121.53.

### DECREE

For the foregoing reasons, it is ordered that Judge Reeves shall be suspended from office without salary for twenty days. Judges Reeves is also ordered to pay the Commission $3,121.53 in hard costs.

**SUSPENSION IMPOSED**

7

**IN RE: JUDGE JOHN C. REEVES**
**SEVENTH JUDICIAL DISTRICT COURT**
**PARISHES OF CONCORDIA AND CATAHOULA**
**STATE OF LOUISIANA**

*Judiciary Commission of Louisiana*

**WEIMER, C.J.**, concurring in part and dissenting in part.

The record supports, and I believe this to be, an isolated and unfortunate, one-time incident. The Judge has never been sanctioned previously, and undisputedly, he initially rejected the payment, accepting the gratuity only after the individual persisted in his request that the Judge take the money. Although the testimony of the Judge and the witnesses diverged in some respects, there was no finding that the Judge was untruthful, unlike the findings in other recent cases. Contrast **In re: Sims**, 25-01449 (La. 3/6/26), ___ So.3d ___, 2026 WL 632413 (Weimer, C.J., concurring in part and dissenting in part); **In re: Foxworth-Roberts**, 25-01127 (La. 12/11/25), 424 So.3d 650, 425 So.3d 120; **In re: Medley**, 25-00879 (La. 10/24/25), 421 So.3d 890 (Weimer, C.J., additionally concurring); see also **In re: Colbert**, 25-00994 (La. 12/11/25), 424 So.3d 620 (Weimer, C.J., concurring). The Judge stipulated to the facts, his testimony did not vitiate the stipulation, and his remorse, according to the Judiciary Commission before which he testified in person, was sincere. The Judiciary Commission found the Judge did not act in bad faith.

I agree with the majority that this action adversely reflects on the judiciary as a whole. A judge is a public servant who should not be self-serving. The vast, overwhelming number of judges seek the office to serve the public. Judge Reeves was doing so when this incident occurred. The gratuity was offered, not to influence

the Judge, but out of appreciation for the assistance the Judge provided to someone he knew.  The Judge now accepts full responsibility for what he did and did not argue otherwise.  Nevertheless, this exchange reflects poorly on the Judge and the judiciary and represents a missed opportunity to demonstrate the integrity of an individual judge and the judiciary as a whole.

I believe a lesser sanction, which is accompanied by copious professional and personal embarrassment, would adequately serve the ends of justice.[1]  I, therefore, respectfully dissent regarding the sanction and otherwise concur.

---

[1] My practical advice is not to accept anything from anyone and to actually look a "gift horse in the mouth" and reject it, citing the Code of Judicial Conduct as a source to extricate oneself from seeming to be ungrateful.